IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Case 2:15-cr-20016-CM |
| ) | |
| JAY GIANNUKOS, ) | |
|     Defendant ) | |

### Defendant's Motion to Compel Discovery

Defendant Jay Giannukos, by and through counsel, respectfully moves this Court grants its motion to compel discovery:

### Memorandum in Support

**I.     Relevant Facts**

Mr. Giannukos was charged in a four count, person indictment on February 19, 2015. He was detained and held at CCA facility in Leavenworth. Mr. Giannukos went to trial on his case in January of 2016. At this trial a man named Jeffrey Roark testified against him and, in fact, was the witness that put the majority of the drug weight against Mr. Giannukos as well. On July 22, 2015, prior to trial, Mr. Roark attempted suicide while residing at CCA (now CoreCivic) for an unrelated case.  There is video of the attempt as well as incident reports at CCA that indicate that the facility determined that it was a Priority 1: Attempted Suicide Resulting in Transportation to an Outside Medical Treatment Provider. Neither these reports nor the video was disclosed to Mr. Giannukos' trial counsel, John Jenab prior to the trial. In fact, the video was not turned over until several years later in 2017 just prior to Mr. Giannukos' first sentencing. The reports were never disclosed. This case was sentenced and appealed and eventually remanded on different grounds. We are back at the trial level and believe that there is additional evidence than what has been given to current

counsel. Specifically, the incident reports that were eventually turned over indicate that there were also at least 4 photos, witness statements, and phone calls and letters from Roark that indicated an intent to harm himself. Additionally, he seeks information on the 5k motion for Mr. Roark related to his testimony in this case, Mr. Roark's criminal history, and any and all evidence showing when and to whom Mr. Giannukos' own phone calls were distributed.

## II.     Legal Argument

A violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) occurs when there is "suppression by the prosecution of evidence favorable to an accused…(that) violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This Court found in *United States v. Ford*, 550 F.3d 975, 981 (10th Cir. 2008) that "a defendant who seeks a new trial based on an alleged *Brady* violation must show by a preponderance of the evidence that '(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material." *Citing United States v. Velardo*, 485 F.3d 553, 558 (10th Cir. 2007).

While Mr. Roark's suicide attempt was captured on video and documented in incident reports, none of this material was turned over to the defense. In fact, even today not all of the evidence related to the suicide attempt has been turned over. An attempted suicide goes to the witness' credibility in many ways for example if there was a possible head injury from the jump that could have impaired memory, his state of mind, his motive to lie or embellish, just to name a few. During cross examination Mr. Giannukos' prior attorney was only able to question Mr. Roark about an "accident" that he had while at CCA. *Id*. At 418. Mr. Roark testified that blacked out after not having received heart medication for several months and fell from the balcony. *Id*. This is in direct contradiction to the findings of the internal investigation at CCA. Ms. Moorehead was aware

2

that there was an internal investigation and video, witness statements, photos and even Roark's own letters and phone calls showed that this was a suicide attempt. Ms. Moorehead knew of this evidence, knew of this inconsistency but did not disclose it to Mr. Giannukos nor correct the false statement at trial.

At a hearing on January 30, 2017, Mr. Giannukos through his counsel asked for a sentencing hearing to be continued because of the issue of the video not being produced. Mr. Jenaub stated: "I have been told by the US Attorney's Office—I have no reason to doubt them—that they don't have the video. Mr. Giannukos wants to confirm that nobody else does either." *Transcript of Hearing* 1/30/2017 at page 4. Ms. Morehead responded "Well, I've never told you the video doesn't exist. I've told you we don't have the video. The video does exist." *Id*. This witness was responsible for testimony regarding the majority of weight that was attributed to Mr. Giannukos. The mental health of the witness, including an attempted suicide, his motivation to lie in order to receive a lighter sentence, and even his ability to clearly remember things due to the head injury he experienced by either falling or jumping off the balcony at CCA, is material to credibility of the testimony and the accuracy of the information.

The government clearly knew about this incident and did not disclose the video or the evidence of the incident, which would show whether Mr. Roark blacked out, as he testified, or jumped. The video was seen by Mr. Jenab and the Court prior to sentencing, however the investigation reports of the incident and the evidence collected was not. When current counsel requested both the video and the reports both were given to me and Mr. Rask indicated that it was in the file. It is clear that this information was readily available and even in the file. It is debatable whether the AUSA purposefully mislead Mr. Jenab as to whether the video even existed. Certainly, from Mr. Jenab's response to Ms. Morehead's statement that the video did, in fact exist, he clearly

was under the impression that the opposite was true. He said "Oh, I've never been told that, but I would, then in that case, I need to get a copy, and---and—and have it at least for the court's consideration at sentencing." Docket Number 83, *Transcript of hearing* on 1/30/2017 at 4. Additionally, Ms. Moorehead stated several times to the court that there was no disciplinary record. Specifically, on the status conference on January 30, 2017 she stated "…and everything that Mr. Giannukos has represented about this disciplinary situation is, my understanding completely false." *Id*. Similarly at the sentencing hearing May 9, 2017 Ms. Moorehead stated:

> "Judge…this situation that occurred with Mr. Roark at CCA occurred several months prior to trial. Mr. Jenab did ask Mr. Roark about it during his testimony, and the extent of that was actually pretty insignificant. He asked if-Mr. Jenab asked if there had been an accident, and…Mr. Roark indicated that he hadn't been getting is heart medication for several months, and he characterized it as a blackout. He didn't remember anything except waking up on the floor. This evidence- this video would not be admissible in trial as extrinsic evidence to try to impeach him. This is not some issue or some fact that directly bears on any material item that he testified about at trial. Mr. Roark has all along maintained that he did not intentionally go over the rail. He's maintained that as being some sort of medical condition. Defendant has nothing contrary to that. He wants us to interpret the video, or ask that you interpret the video in some manner." *Sentencing transcript Document 101 pages 9-10.*

Later she again stated:

> "If the government believed it had any shred of relevance to Mr. Roark, or if the defendant had some evidence contrary to what Mr. Roark has claimed, that it was some sort of medical condition that had occurred then perhaps we would be taking a different position, but they don't…Mr. Giannukos claims that he had evidence that Mr. Roark had changed what he had said, that it was an accident, and in fact I produced documentation to demonstrate otherwise. So, this has consistently been what Mr. Roark has said all along to CCA personnel, to his attorney, at trial under oath. So. There's nothing to demonstrate, again, that it's anything other than a truthful account about what happened on that day." *Id at 10-11.*

There are 3 separate times on the record where Ms. Moorehead stated that there was no disciplinary report or anything to indicate that this was a suicide attempt and not, as Mr. Giannukos asserted a blackout due to a medical condition. Considering we are now in possession of at least part of the report and evidence and it was in the file already one can only assume that Ms.

4

Moorehead either was woefully unaware of what was in her own file and failed to even bother to look or she knew the evidence was there and purposely told Mr. Jenab and the Court otherwise. Considering this office's history of misleading defense counsel and the court on ethical issues, it is not hard to believe that Mr. Jenab was misled as to the existence of this information.

Once Mr. Jenab was actually able to see the video, he indicated that it showed a much different scene than the one Mr. Roark described. Mr. Jenab, in the sentencing hearing held on March 21, 2017, discusses the video and stated that ""I've been able to watch it, I think it's pretty clear, it—it indicates quite clearly that Mr. Roark intentionally went over the tier at CCA, and he had testified at trial that he blacked out and fell…" *Docket Number 84 Sentencing transcript* page 8. This is evidence that directly impacts the witness' credibility. Not giving it to the defense to allow them to effectively cross examine the witness is a violation of *Brady*. In U.S. v. Robinson, 589 F.3d 1265 (10th Cir 2009) the Court decided that the district court's refusal to grant defense counsel access to a confidential informant's medical file after he was involuntarily committed to a mental health facility six days prior to trial or question his mental health history or use of prescriptions did violate the defendant's due process and sixth amendment rights. "Because of the restrictions imposed by the district court, the jury saw an incomplete and inaccurate picture of the CI's credibility. From the jury's perspective, the CI had only "a little bit" of a drug problem and was not 'regularly' violating his agreement with the ATF by using drugs. By that version of events, the CI had largely reformed himself after becoming an ATF informant. Further, although the CI had trouble remembering various details about the event in question, he testified that the only reason for his memory loss was that two years had elapsed by the time of trial. Nothing in the testimony the jury heard suggested that the CI had a reduced capacity to observe or narrate." *Id*.

5

This is a very similar situation to Mr. Giannukos, except it is the AUSA failing in her obligation to disclose Brady evidence and lying to the court about its existence rather than the court denying a motion in trial, however the result is the same. In Mr. Giannukos' trial, the jury heard someone testify that was married, born in Tennessee, had lived in Kansas City since 1992, who had a drug problem but was able to maintain a job, who had a heart condition. Since Mr. Jenab did not have the documents related to the investigation nor the video that does not show someone passing out and falling but rather someone climbing up on the railing and purposefully going over, nor the reports that he had expressed intentions of suicide in letters and on the jails recorded phone, he was denied the opportunity to cross examine him. The jury was left with an incomplete picture of Mr. Roark's credibility. They were presented with a hard-working man who struggled with addiction rather than someone who was so mentally distraught not 6 months before trial he wrote about suicide, he spoke about suicide and he attempted suicide.

### III.   Conclusion

Considering the bad faith shown by the government in failing to provide Brady evidence to the defense and misleading the court about its existence, defendant's motion to compel discovery should be granted.

Respectfully submitted,

*/s/ Angela Williams*

Angela L. Williams
KS 20956
Law Offices of Angela L. Williams, LLC
4049 Pennsylvania Suite 201
Kansas City, Mo 64111
816-531-2166 (T)
816-531-2444 (F)
Angie.williams@me.com

Attorney for Defendant Giannukos

6

## CERTIFICATE OF SERVICE

      I hereby certify that on____January 2, 2020_____, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

                                          s/ Angela Williams
                                          Angela Williams